**Opinion issued November 7, 2019**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00559-CR

———————————

**ANTHONY JAMAL CUNNINGHAM Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 207th District Court**
**Comal County, Texas[1]**
**Trial Court Case No. CR2016-899**

---

## O P I N I O N

A jury found Anthony Jamal Cunningham guilty of the capital murder of

Christopher Lowe.[2] The trial court sentenced Cunningham to life in prison as

---

1    The Texas Supreme Court transferred this appeal from the Court of Appeals for the Third District of Texas. See TEX. GOV'T CODE § 73.001 (authorizing transfer of cases between courts of appeals).

statutorily required.[3] In one issue, Cunningham contends that the evidence was insufficient to support the judgment of conviction.

We affirm.

## Background

On the night of August 24, 2016, Zoie B.; her mother, Denise; and Zoie's friend, Sunee S., went to a few bars in New Braunfels, Texas. After leaving the last bar, the hood of Zoie's truck flew open, and they could not close it. Sunee called her friend, Luis DeLeon, to come help with the hood.

Cunningham was DeLeon's friend, and he went with DeLeon to help with Zoie's truck. After some effort, they realized that they did not have the proper tools to fix the hood.

Zoie's truck was drivable, and the group convinced her to take it to a storage facility where DeLeon rented a storage unit and kept his tools. DeLeon had constructed a makeshift apartment in the storage unit and was living there. As they

---

[2]     *See* TEX. PENAL CODE § 19.03(a)(2).

[3]     Appellant was 16 years old at the time of the offense. The juvenile court of Comal County waived jurisdiction and ordered Cunningham transferred to criminal district court. Because he was a juvenile at the time the offense was committed, Cunningham was given the mandatory sentence of life in prison. *See* TEX. PENAL CODE § 12.31(a)(1)–(2) (providing that adult offenders convicted of capital offenses receive sentence of life without parole, while juvenile offenders receive life with possibility of parole); *see also* TEX. GOV'T CODE § 508.145(b) (providing that offender who was juvenile when offense committed and sentenced to life in prison is eligible for release on parole after 40 years).

2

drove to the storage facility, DeLeon and Cunningham rode in DeLeon's car. Zoie, Denise, and Sunee followed in Zoie's truck.

Meanwhile, Christopher Lowe had jumped the fence to the storage facility and had entered DeLeon's storage unit to retrieve property, including a cell phone, that had been taken from him. Lowe was still in DeLeon's storage unit as DeLeon's car and Zoie's truck neared the storage facility. When they were about half a mile from the storage facility, Sunee answered a call on Zoie's phone. After ending the call, Sunee immediately called DeLeon. When he answered, Sunee screamed into the phone: "Lowe. Lowe. Get Lowe in the storage unit."

At the entrance to the storage facility, DeLeon got out of his car, retrieved a baseball bat from the trunk, and got back into the car with the bat. DeLeon then quickly drove away from the entrance into the storage complex. Sunee urged Zoie to follow DeLeon, yelling, "Go, go, go. Get 'em. Get 'em. Go, go, go." Zoie followed DeLeon and within a minute arrived at the storage unit.

When Zoie pulled up, the overhead door to the storage unit was raised. Inside the storage unit, Lowe was on a bed in the corner. DeLeon was repeatedly striking Lowe with the baseball bat while Cunningham repeatedly punched Lowe with his fists.

Zoie and Sunee got out of the truck, and Sunee ran into the storage unit. She jumped on the bed and started punching Lowe. Zoie saw DeLeon continually strike

Lowe in the head with the baseball bat, and Cunningham repeatedly punched Lowe in the head with his fists. Sunee was standing on the bed over Lowe punching him from above wherever she could land a blow. Lowe was screaming for help and kept a defensive posture with his arms up to protect his head and his legs tucked against his body.

Disturbed by what she was witnessing, Zoie decided to leave with Denise. However, when she reached the front of the storage facility, the gate would not open without a passcode, which she did not know. Zoie then drove back to the storage unit.

The door to the storage unit was closed, but after about 30 seconds, the door opened. Inside, Zoie saw Lowe standing up from the bed. DeLeon was striking Lowe in his ribs with the bat telling him, "go, go, go," while Cunningham punched Lowe in the side. Zoie and Denise saw that Lowe was bleeding. DeLeon and Cunningham were yelling at Lowe, ordering him to walk out of the storage unit. Lowe was responding that he could not see. Lowe was unsteady on his feet, appeared disorientated, and had difficulty walking. Cunningham and DeLeon began pushing Lowe out of the storage unit. DeLeon left and moved his car closer to the unit while Cunningham pushed Lowe toward the car.

DeLeon opened the rear passenger door of his car, and Cunningham forced Lowe into the backseat. Lowe tried to get out of the vehicle; half of his body was

inside the car and half was outside. Cunningham slammed the car door into Lowe. Cunningham then pushed Lowe all the way into the car and slammed the door shut. At trial, Zoie testified that she knew Lowe was still alive when Cunningham forced him into the car because she could see Lowe moving and heard Lowe making "pain sounds."

Cunningham got into the car with DeLeon and they left the storage facility with Lowe. Zoie and Denise followed the car out of the storage facility but later returned. Zoie was worried that DeLeon and Cunningham might return and harm Sunee. Zoie found Sunee cleaning the bloodstains from the storage unit.

A couple of hours after DeLeon and Cunningham left, they returned to the storage unit without Lowe. DeLeon told Sunee and Zoie that Cunningham had stabbed Lowe "in the forehead" and "in the jugular." Zoie saw Cunningham laughing when DeLeon said that Cunningham had stabbed Lowe in the forehead.

Lowe's body was discovered later that day in a historic New Braunfels's cemetery. The following day, Zoie and Denise went to the police to report what they had witnessed at the storage facility relating to Lowe's death.

DeLeon, Cunningham, and Sunee were taken into custody. The police noted that DeLeon and Cunningham each had cuts on their hands known as "slip injuries." At trial, slip injuries were described as injuries typically seen when one

person stabs another and loses his grip on the knife's handle and his hand runs across the knife blade.

Cunningham was cooperative and provided authorities with information leading to the recovery of two knives suspected as being used in Lowe's murder. DeLeon's car was also recovered. The inside of the car had been cleaned, but blood was found underneath the seats, the carpets and the interior panels of the vehicle. Blood was also found on the bumper and the underside of the car.

The police obtained a search warrant for Cunningham's cell phone. The phone contained an SD card, which had previously been used in Lowe's cell phone. Cunningham's cell phone also had messages from the day after Lowe's body was discovered. In one message, he indicated to the person he was corresponding with that he could not hang out because he was hiding at his brother's home. The message ended with "#MURDERGAME." When the person he was messaging with asked him what he meant, Cunningham responded, "MURDER GANG." Soon after that message, Cunningham posted a news story on Facebook regarding the discovery of Lowe's body. Later in the messages, Cunningham stated, "I'm getting charged with murder."

Cunningham was indicted for capital murder. The indictment alleged, in relevant part, that Cunningham had intentionally caused Lowe's death by striking him with his "hand or hands," by striking Lowe with a bat, by stabbing Lowe with

6

"a knife or knives," by striking Lowe with a motor vehicle, and by running over him with a motor vehicle. The indictment also alleged that Cunningham "committed the murder in the course of committing or attempting to commit kidnapping."

At trial, Zoie and Denise described what they had witnessed in the storage facility. Zoie provided the most detailed testimony. She testified about witnessing the beating of Lowe, about seeing and hearing indications that Lowe was still alive when he was forced into DeLeon's car, and about hearing DeLeon say that Cunningham had stabbed Lowe in the forehead and "in the jugular." Denise testified that she saw Lowe being beaten, Cunningham lead Lowe to DeLeon's car, and Cunningham and DeLeon take off with Lowe in the vehicle.

In addition to the investigating police officers, the State called Dr. S. Dana, the forensic pathologist who performed Lowe's autopsy. Dr. Dana testified that the autopsy showed that Lowe had "several very large lacerations to his scalp" and that his skull was fractured. She stated that Lowe had received a minimum of nine blows to the head. Dr. Dana also testified that Lowe had about 20 stabs wounds. She agreed that the stab wounds were consistent with two different knife blades being used to inflict the injuries.

Dr. Dana stated that Lowe's body had abrasions that she referred to as "road rash." She stated that this indicated that Lowe had been dragged against a hard

surface, such as a road. But these injuries appeared to have been inflicted post-mortem.

Regarding what caused Lowe's death, Dr. Dana testified that Lowe sustained two injuries—blunt force trauma to his head and a stab wound to his back—each of which were potentially fatal. However, she concluded that Lowe "died as a result of blunt force head injury and multiple stab wounds."

After the State rested, Cunningham moved for directed verdict. Cunningham claimed that the State did not show Lowe was murdered in the course of being kidnapped. He asserted that there was "absolutely no evidence . . . that kidnapping . . . was a consideration either before the killing or during the killing." The State responded that the evidence showed "Lowe's death was caused by multiple stab wounds to his body, taken together in tandem, after his freedom of movement was restrained and the underlying felony for kidnapping was committed."

The trial court denied the motion for directed verdict, stating,

Inasmuch as it would appear that there's a fact issue as to which, if any, of these inflicted wounds was the actual cause of death, and that some of those may have occurred after the placement of the deceased in the vehicle and the restraint of him in the vehicle, I'm going to deny the motion.

The court's charge authorized the jury to find Cunningham guilty as a primary actor, under the law of parties, or as a conspirator. The jury found Cunningham guilty of capital murder as charged in the indictment. The trial court

8

sentenced Cunningham to life in prison as statutorily required. This appeal followed.

## Sufficiency of the Evidence

In one issue, Cunningham contends that the evidence was insufficient to prove that he committed capital murder because it did not show that he committed murder in the course of committing kidnapping.

## A.     Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to the *Jackson* standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *In re Winship*, 397 U.S. 358, 361 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See*

*Jackson*, 443 U.S. at 314, 318 & n.11, 320; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the factfinder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *see Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the factfinder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326.

In our review of the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

**B.      Elements of the Offense**

Penal Code Section 19.03(a)(2) provides that a person commits capital murder if he commits murder, as defined under Section 19.02(b)(1) (intentionally or knowingly causing the death of an individual), and the person intentionally

commits the murder in the course of committing or attempting to commit a specified offense, in this case, kidnapping. TEX. PENAL CODE § 19.03(a)(2); *see id.* § 19.02(b)(1). As used in Section 19.03(a)(2), "in the course of committing" is defined as conduct occurring during an attempt to commit, during the commission of, or in immediate flight from, the forbidden behavior. *Griffin v. State*, 491 S.W.3d 771, 774–75 (Tex. Crim. App. 2016).

Penal Code Section 20.03(a) provides that a person commits kidnapping if he intentionally or knowingly abducts another person. TEX. PENAL CODE § 20.03(a). "'Abduct' means to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." *Id.* § 20.01(2). "'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1). A kidnapping becomes a completed offense when (1) a restraint is accomplished, and (2) there is evidence that the actor had the specific intent to prevent liberation by secretion or the use or threatened use of deadly force. *Santellan v. State*, 939 S.W.2d 155, 162 (Tex. Crim. App. 1997). The State proves attempted kidnapping when it shows that the perpetrator committed an act beyond mere preparation with intent to secrete or

11

hold the victim. *See Laster*, 275 S.W.3d at 522; *see also* TEX. PENAL CODE § 15.01(a) (defining criminal attempt).

## C.   Analysis

To recap, the evidence showed that Lowe had entered DeLeon's storage unit while DeLeon was helping Zoie with her truck. After discovering Lowe in the storage unit, DeLeon and Cunningham repeatedly hit Lowe in the head. DeLeon used a baseball bat, and Cunningham used his fists.

Zoie testified that she and Denise attempted to leave the storage facility. When they could not exit through the gate, they returned to the storage unit. Zoie saw DeLeon and Cunningham hitting Lowe on his sides and screaming at him to walk out of the storage unit. Lowe was on his feet, yelling that he could not see. He was bleeding, and Zoie testified that he seemed "discombobulated" and "mentally messed up."

After DeLeon moved his car closer to the unit's entrance, Cunningham pushed Lowe out of the storage unit to the car. Zoie testified that, after Cunningham sat him in the car, Lowe tried to get out of the vehicle. Lowe's body was half in and half out of the car. Cunningham slammed the car door on Lowe's body and then pushed Lowe back into the car. Zoie said that she heard Lowe moving in the car, and she heard him make noises that sounded like he was in pain. DeLeon and Cunningham left the storage facility with Lowe.

12

Approximately two hours later, Cunningham and DeLeon returned to the storage unit without Lowe. DeLeon told Zoie and Sunee that Cunningham had stabbed Cunningham in the forehead and "in the jugular."

Later in the day, Lowe's body was found in a local cemetery. Dr. Dana, the forensic pathologist who performed Lowe's autopsy, testified that Lowe had been struck in the head at least nine times. She stated that Lowe had a skull fracture that was potentially fatal. Dr. Dana also testified that Lowe had been stabbed at least 20 times. She indicated that the stab wounds were consistent with two knives being used. Dr. Dana stated that one of the stab wounds, in Lowe's back, had also been potentially fatal.

Dr. Dana testified that she had determined that Lowe's cause of death was blunt force head trauma and multiple stab wounds. She clarified that, although the blunt-force head trauma and one of the stab wounds were each potentially fatal, she had "made the cause of death as head trauma and stab wounds" because "the combination of 20 stab wounds can cause significant bleeding."

On appeal, Cunningham does not dispute that the evidence, showing that Lowe was forcibly placed in DeLeon's car against his will and driven away from the storage facility, was sufficient to prove the offense of kidnapping or attempted kidnapping. *See* TEX. PENAL CODE § 20.03(a). Nor does he dispute that the evidence was sufficient to show the offense of murder. *See id.* § 19.02(b)(1).

Instead, Cunningham asserts that the evidence was insufficient to show that Lowe was murdered *in the course of* the kidnapping as required to prove capital murder in this case. *See id.*

To show that Lowe was murdered in the course of being kidnapped, the State had to prove that Cunningham (or DeLeon) developed the requisite intent for kidnapping at or before the time of Lowe's death. *See Santellan*, 939 S.W.2d at 162. Cunningham correctly observes that a felony committed as an afterthought and unrelated to the murder is not sufficient to prove capital murder under Section 19.03(a)(2). *Griffin*, 491 S.W.3d at 776 (citing *Herrin v. State*, 125 S.W.3d 436, 440–41 (Tex. Crim. App. 2002) (holding that evidence of capital murder was insufficient when no evidence showed that appellant intended to kidnap victim before or during intentional murder)).

Cunningham acknowledges that the evidence showed that Lowe was stabbed at least 20 times and died after he was forcibly taken from the storage facility. Nonetheless, Cunningham asserts that the kidnapping was an afterthought to the murder because, at the time of the kidnapping, he and DeLeon had already struck Lowe in the head. Cunningham intimates that, to satisfy the "in the course of" requirement, the evidence must show that the kidnapping preceded the murder and that, here, it did not because Lowe's murder began when Cunningham and DeLeon first struck him in the head.

14

To support of his position, Cunningham cites *Herrin*, 125 S.W.3d at 440. In that case, Herrin walked up to the complainant, who was sitting in his truck, and shot him at close range through the heart. *Id.* at 438. Herrin removed the complainant's body from the truck and began dragging it toward the back of the pickup before being stopped by a bystander. *Id.* The forensic pathologist testified that the complainant was dead within six minutes of being shot. *Id.* at 439.

The Court of Criminal Appeals determined that the evidence was insufficient for the jury to have found that the murder was committed in the course of kidnapping or attempted kidnapping because there was no evidence that Herrin intended to kidnap the victim at or before the time he committed the murder, that is, at the time he shot the complainant in the heart. *Id.* at 440. The court held that Herrin's "moving of the body after the shooting in which [Herrin] intended to kill the victim does not amount to a kidnapping or attempted kidnapping." *Id.*

A case that stands in contrast to *Herrin* is *Santellan*, 939 S.W.2d at 164. In that case, Santellan shot his ex-girlfriend several times, including in the head. *Id.* at 162. He had then placed her in his car and drove her to a motel where he stayed with her body for a number of hours. *Id.* The medical examiner testified that the victim was likely brain dead at the time Santellan placed her in his car but said that her heart may have still been beating for a few minutes. *Id.*

Santellan was convicted of murdering his ex-girlfriend in the course of attempting to commit kidnapping. *Id.* at 159. On appeal, Santellan asserted that the evidence did not show that he had the specific intent to kidnap the victim either at or before the point of the murder. *Id.* at 163. The Court of Criminal Appeals disagreed. *Id.* at 164.

The court cited evidence of statements Santellan made to police following the murder. *Id.* Santellan had told police that he thought the victim was alive when he placed her in his car. *Id.* He also told police that he "just wanted to get away and be with [the victim] and spend some time together," he "wanted to show her how much [he] really loved her," and he "felt that [the victim] was right there with me. We laid together and held each other like we used to." *Id.* at 161, 164. Based on this evidence, the court held that "sufficient evidence was presented upon which a rational juror could have concluded that appellant had developed the intent to kidnap the victim before or at the time of her death." *Id.* at 164.

Here, as in *Santellan*, the State presented evidence from the which the jury could have reasonably inferred that the intent to kidnap was formed before Lowe's death. The evidence showed that Lowe was alive when DeLeon and Cunningham forcibly took him from the storage facility. Zoie testified that, when she returned to the storage unit after attempting to leave, Cunningham and DeLeon were screaming at Lowe to walk and hitting him in the ribs, forcing him to leave the

storage unit. When Lowe had difficulty walking, they started pushing him out of the storage unit. Cunningham put Lowe in DeLeon's car, but Lowe tried to leave the vehicle. Cunningham then slammed the door on Lowe and forced him to get in the car. After he was in the car, Zoie heard Lowe moving in the car and making "pain noises," indicating that he was still alive when DeLeon and Cunningham drove away with him

And in contrast to *Herrin*, here, the conduct finally resulting in Lowe's death—Cunningham's and DeLeon's stabbing Lowe 20 times—did not occur until after Lowe was forcibly taken from the storage facility. *See Bush v. State*, No. PD-1012-16, 2018 WL 2041439, at *6 (Tex. Crim. App. May 2, 2018) (not designated for publication) (distinguishing *Herrin* on ground that, unlike *Herrin*, no evidence was presented showing that abduction occurred after the murder). Dr. Dana testified that, not only was one of the 20 stab wounds potentially fatal, she determined that the blunt force trauma, inflicted before the kidnapping, *and* the multiple stab wounds, inflicted after Lowe's abduction from the storage unit, caused Lowe's death.

In sum, based on the evidence, the jury could have reasonably inferred that the intent to kidnap Lowe was formed at or before the time of his murder. *See Santellan*, 939 S.W.2d at 164; *see also Robertson v. State*, No. 10-13-00105-CR, 2015 WL 1756317, at *5 (Tex. App.—Waco Apr. 16, 2015, pet. ref'd) (mem. op.,

17

not designated for publication) (holding evidence was sufficient for jury to reasonably infer that intent to kidnap was formed before or at time of murder when evidence showed that appellant had stabbed victim while she sat in car, had entered car and then had driven victim to another city).

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational fact finder could have found, beyond a reasonable doubt, each element necessary to support the finding that Cunningham committed the offense of capital murder as charged in the indictment. *See* TEX. PENAL CODE § 19.03(a)(2). Accordingly, we hold that the evidence was sufficient to support the judgment of conviction.

We overrule Cunningham's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Countiss.

Publish. TEX. R. APP. P. 47.2(b).

18